FILED '10 NOV 09 10:59USDC-ORP

1

2

3

4

5

6

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

7   RYDER GAUTERAUX & dba OUTLAW      )
    PRODUCTIONS                       )   Case No.   CV '10 - 1382   MO
8   (RYDER GAUTERAUX, DAN WOLFE)      )
                                      )   COMPLAINT
9                                     )   (Breach of contract, Account Stated,
                   Plaintiff,         )   Reasonable Value, Negligence, Bribery,
10  Vs                                )   Racketeering, and Loss of Income, Extortion)
                                      )
11  NORTHWEST RODEO ASSOCIATION       )   Jury Trial Demanded
    INC. dba NORTHWEST PROFESSIONAL   )
12  RODEO ASSOCIATION;                    **THIS CLAIM EXCEEDS $75,000**

13  PAT SHANNON; and

14  RANDY AMIS
                   Defendants.

15

16  _____

17

18

19

20                              PARTIES

21                                 1.

22      **Plaintiff** Ryder Gauteraux (hereafter "Plaintiff") is a resident of Deschutes County,

23  Oregon, acting personally and under the assumed business name of Outlaw Productions, Ryder

24  Gauteraux and Dan Wolfe, a partnership doing business in Deschutes County, Oregon.

25      Located at PO Box 1960 Sisters OR 97756,

26      Phone; 541 410 5317

Page 1 –PLAINTIFF'S COMPLAINT

2.

**Defendant No.(1)** Northwest Rodeo Association, Inc DBA. Northwest Professional Rodeo Association, Inc. (hereinafter "Defendant NPRA") is a non-profit corporation organized and registered in the state of Washington,

 Secretary office located at 35988 Sawtell Rd, Molalla, OR 97038 t

 Phone; 503 829 8868


**Defendant No.(2)** Pat Shannon (hereinafter "Defendant Shannon") is recognized as the President for the Defendant NPRAs' organization for the years 2008, 2009, and Past-President for 2010.

 Only known location is Secretary Office at 35988 Sawtell Rd, Molalla, OR 97038

 Phone; unknown


**Defendant No.(3)** Randy Amis(hereinafter "Defendant Amis") is recognized as the Vice-President for the Defendant NPRAs' organization for the years 2008, 2009,2010

 Only known location is Secretary Office at 35988 Sawtell Rd, Molalla, OR 97038

 Phone; 541 480 3165


3.

<u>JURISDICTION</u>

 This Court has jurisdiction over Plaintiffs proposed Complaint because (1) Plaintiff's complaint includes violations of the RICO act Chapter 96 of Title 18 of the United States Code § 1961–1968, (2) Plaintiff is a resident of Oregon, and Defendant NPRA is a corporation organized in the State of Washington and only registered to do business in Oregon after events detailed in this complaint. (3) Plaintiff seeks contribution and/or judgment in excess of $75,000 based on the actions and/or omissions of the Defendant's related to the Plaintiff's claim.

Page 2 –PLAINTIFF'S COMPLAINT

1

4.

2

## COMPLAINT

3       Plaintiff alleges the following complaints, this complaint is filed Pro-Se though,

4

Throughout this filing "reasonable attorney fees" are mentioned, Plaintiff only states this for in

5

the event counsel must be hired, (hereinafter stated "reasonable attorney fees") is only asked for

6

in the event representation is hired.

7

8

9                                 **Count I**

10                            **(Breach of Contract)**

11                                      5.

12       On or about January 17, 2008, in Redmond, Oregon, Defendant NPRA contracted with

13   Plaintiff to help with the obligations set forth in the corporations Bylaws and rulebook, to assist

14   in the organization, promotion and Production the 2008 Northwest Pro Rodeo Finals, and to do

15   so acting according to the 2008 NPRA rulebook and by-laws, with technical authority granted to

16   Plaintiff working with Defendant NPRAs' Finals committee.

17       With a one page contract written by the Defendant NPRA, the agreement was made for

18   Plaintiff to help  promote and produce the 2008 Northwest Professional Rodeo Finals according

19   to the current (NPRA Rules and Procedures), and to help pay for the production through the sale

20   of the NPRAs' name and production of the NPRA Finals. A copy of the agreement, 2008 finals

21   rules-procedures and bylaws is attached hereto as Exhibit "1" and by this reference incorporated

22   herein.  At such Defendant NPRAs insistence and request, Plaintiff has fully performed all of its

23   obligations possible under the contract to the existent authorized.

24

25                                      6.

26       After paying out all sums of money brought in through the sale of the NPRAs' name and

Page 3 –PLAINTIFF'S COMPLAINT

1   the production of the 2008 Finals there was a financial loss of $65,499. This loss was noted and

2   relayed to the President of the NPRA Pat Shannon and the NPRA secretary within the week

3   following the conclusion of the 2008 Finals

4

5                                              7

6          After Plaintiff attempted to work with the Defendant's President, Vice-President and the

7   NPRA board of directors to have the Suppliers paid for their services that they had provided to

8   assist in the promotion and production of the 2008 NPRA Finals, Defendant NPRA failed to

9   make payment for the services provided to the 2008 NPRA Finals over and above income

10  Plaintiff collected for promotion and production of the event.

11

12                                             8.

13         On or about November 15, 2008 in Redmond OR Plaintiff hand delivered to Defendant

14  Amis (NPRA Vice-President and NPRA Finals chairman) the 2008 Finals financial details,

15  contracts, and a letter stating that we the Plaintiff had completed all of our obligations in

16  producing the 2008 Northwest Professional Rodeo Finals, and was not interested in any further

17  involvement with the Defendant NPRAs' Organization. The Defendant NPRA was asked to pay

18  the sum of $65,499, this was ignored and therefore shows intentional disregard of the obligations

19  set forth in defendants own By-laws and rulebook. The refusal to pay for all the services

20  provided currently total the amount of $47,499, together with interest at the rate of nine (9%) per

21  annum from the date each payment became due until paid in full. A copy of this demand is attach

22  hereto as Exhibit "2" and by this reference incorporated herein.

23

24                                             9.

25         The disregard of the agreement between Plaintiff and Defendants NPRA justifies for the

26  collection of reasonable attorney fees if Plaintiff so hires counsel at any time before the

Page 4 –PLAINTIFF'S COMPLAINT

1  conclusion of the process of this filed complaint. Filed by the Plaintiff, to collect such unpaid

2  charges for services rendered to the Defendant NPRAs 2008 Finals.

3  ///

10.

4

5      The Defendant NPRAs failure to pay for all of the services provided to the 2008 NPRA

6  Finials, over and above income received from promotion and production of the Northwest Pro

7  Rodeo Finals constitutes a breach of contract, this willful breach of contract and disregard of the

8  corporation bylaws and rulebook by the Defendant NPRA, was attended by such malice, insult

9  and abuse that it constitutes an independent tort, thus entitling the Plaintiff to recover punitive

10 damages as well as actual damages, which were proximately and foreseeable and caused by the

   Defendant NPRA's actions.
11
        And for reasonable attorney fees sought by Plaintiff to collect such unpaid charges of
12
   services rendered.
13

14

15                                      **Count II**

16                                  **(Account Stated)**

17                                          12.

18      Plaintiff reallocates paragraphs 15 through 19 of Plaintiff's First Claim for Relief and by

19 this reference, incorporates them herein.

20

21                                          13.

22      On or about November 15, 2008, an account was stated between Plaintiff and Defendant

23 NPRA and upon such statement of account, Defendant was given notice and is indebted to

24 Plaintiff in the sum of $47,499 together with interest at the rate of nine (9%) per annum from the

25 date each payment became due until paid in full. and for reasonable attorney fees sought by

26 Plaintiff to collect such unpaid charges of services rendered

Page 5 –PLAINTIFF'S COMPLAINT

14.

Defendant NPRA is required by its membership through obligations set forth in its own By-laws and rulebook (exhibit #1) to promote and produce an annual finals rodeo and when the Plaintiff provided statements demanding payment for services rendered to fulfill those obligations, but after that demand, Defendant has failed and refused to pay said sum in full and elected to only pay for selected portions of the services render.

## Count III

### (Reasonable Value)

15.

Plaintiff relegates paragraphs 5 through 10 of Plaintiff's First Claim for Relief and by this reference, incorporates them herein.

16.

Proceeding to and on or about September 19-20, 2008, in Deschutes County, Oregon, Plaintiff organized for services to be provided to Defendant NPRA, and Defendant NPRA is indebted to Plaintiff for the reasonable value of those services; said services are reasonably worth $47,499 and for reasonable attorney fees sought by Plaintiff to collect such unpaid charges of services rendered

17.

Defendant NPRA has not paid said amount and elected to only pay for selected portions of the services render.

## Count IV

### (Negligence, Bribery, Racketeering)

18.

Page 6 –PLAINTIFF'S COMPLAINT

1    On or about October 28, 2008 in Fossil Oregon, Defendant NPRA drafted a

2  contract and named it Promissory Note, and forcing Norm Durfey to sign and agree to before

3  payment in the sum of $1,400.00 would be paid for services he provided for production of the

4  2008 NPRA Finals. A copy of this Promissory Note is attached hereto as Exhibit "3" and by this

5  reference incorporated herein.

6                                          19.

7    The Defendant NPRA thus demanded Norm Durfey to attempt to collect money from

8  Plaintiff though any and all possible means including filing of a lawsuit. The Defendant NPRA

9  then followed this by demanding that Norm Durfey would assign any and all claims and

10  collection rights over to the Defendant NPRA.

11    The Defendant NPRA essentially was demanding Norm Durfey to cause the Plaintiff

12  harm in lieu of payment for services he provided for the production of the Defendant NPRAs

13  Finals thus clearly engaging in the act of bribery.

14                                          20.

15    The Defendant NPRA is an organization is registered in the State of Washington and

16  operates in the state of Oregon and Idaho.

17                                          21.

18    Engaging in such activities in the State of Oregon, that are done with clear intent to do

19  harm to the Plaintiff, a known resident of the State of Oregon and to effectively cause intentional

20  harm to the Plaintiff financially is a clear violation of the RICO act Chapter 96 of Title 18 of the

21  United States Code § 1961–1968

22                                          22.

23    All actions described in paragraphs 18 through 21 were done without plaintiffs'

24  knowledge, participation or consent.

25                                          23.

26    All demands made by Plaintiff for Norm Durfey to participate in any action following the

Page 7 –PLAINTIFF'S COMPLAINT

1  signing of "Exhibit 3" have not been acted upon as far as Plaintiff has knowledge.

2

3                              **Count V**

4                   **(Negligence, Bribery, Racketeering)**

5                                  24.

6          On or about October 28, 2008 in Fossil Oregon, Defendant NPRA drafted a

7  contract and named it Promissory Note, and forcing Deane Bain to sign and agree to before

8  payment in the sum of $4,550.00 would be paid for services he provided for production of the

9  2008 NPRA Finals. A copy of this Promissory Note is attached hereto as Exhibit "4" and by this

10 reference incorporated herein.

11                                 25.

12         The Defendant NPRA thus demanded Deane Bain to attempt to collect money from

13 Plaintiff though any and all possible means including filing of a lawsuit. The Defendant NPRA

14 then followed this by demanding that Deane Bain would assign any and all claims and collection

15 rights over to the Defendant NPRA.

16         The Defendant NPRA essentially was demanding Deane Bain to cause the Plaintiff harm

17 in leiu of payment for services they provided for the production of the Defendant NPRAs Finals

18 thus clearly engaging in the act of bribery.

19                                 26.

20         The Defendant NPRA is an organization is registered in the State of Washington and

21 operating in the state of Oregon and Idaho.

22                                 27.

23         Engaging in such activities in the State of Oregon, that are done with clear intent to do

24 harm to the Plaintiff, a known resident of the State of Oregon and to effectively cause intentional

25 harm to the Plaintiff financially is a clear violation of the RICO act Chapter 96 of Title 18 of the

26 United States Code § 1961–1968

Page 8 –PLAINTIFF'S COMPLAINT

1

28.

2   All actions described in paragraphs 18 through 21 were done without plaintiffs'

3   knowledge, participation or consent.

4

29.

5   All demands made by Plaintiff for Deane Bain to participate in any action following the

6   signing of "Exhibit 4" have not been acted upon as far as Plaintiff has knowledge.

7

8

**Count VI**

9

**(Negligence, Bribery, Racketeering)**

10

30.

11   On or about October 28, 2008 in Fossil Oregon, Defendant NPRA drafted a contract and

12   named it Promissory Note, and forcing Kelly Bowcutt to sign and agree to before payment in the

13   sum of $6,650.00 would be paid for services he provided for production of the 2008 NPRA

14   Finals. A copy of this Promissory Note is attached hereto as Exhibit "5" and by this reference

15   incorporated herein.

16

31.

17   The Defendant NPRA thus demanded Kelly Bowcutt to attempt to collect money from

18   Plaintiff though any and all possible means including filing of a lawsuit. The Defendant  NPRA

19   then followed this by demanding that Kelly Bowcutt would assign any and all claims and

20   collection rights over to the Defendant NPRA.

21   The Defendant NPRA essentially was demanding Kelly Bowcutt to cause the Plaintiff

22   harm in lieu of payment for services he provided for the production of the Defendant NPRAs

23   Finals thus clearly engaging in the act of bribery.

24

32.

25   The Defendant NPRA is an organization is registered in the State of Washington and

26   operating in the state of Oregon and Idaho.

Page 9 –PLAINTIFF'S COMPLAINT

33.

Engaging in such activities in the State of Oregon, that are done with clear intent to do harm to the Plaintiff, a known resident of the State of Oregon and to effectively cause intentional harm to the Plaintiff financially is a clear violation of the RICO act Chapter 96 of Title 18 of the United States Code § 1961–1968

34.

All actions described in paragraphs 18 through 21 were done without plaintiffs' knowledge, participation or consent.

35.

All demands made by Plaintiff for Kelly Bowcutt to participate in any action following the signing of "Exhibit 5" have not been acted upon as far as Plaintiff has knowledge.

**Count VII**

**(Negligence, Bribery, Racketeering)**

36.

On or about November 25, 2008 in Fossil Oregon, Defendant NPRA drafted a contract and named it Promissory Note, and forcing Jason Buchanan to sign and agree to before payment in the sum of $3,000.00 would be paid for services he provided for production of the 2008 NPRA Finals. A copy of this Promissory Note is attached hereto as Exhibit "6" and by this reference incorporated herein.

37.

The Defendant NPRA thus demanded Jason Buchanan to attempt to collect money from Plaintiff though any and all possible means including filing of a lawsuit. The Defendant NPRA then followed this by demanding that Jason Buchanan would assign any and all claims and collection rights over to the Defendant NPRA.

The Defendant NPRA essentially was demanding Jason Buchanan to cause the Plaintiff

Page 10 –PLAINTIFF'S COMPLAINT

1  harm in lieu of payment for services he provided for the production of the Defendant NPRAs
2  Finals thus clearly engaging in the act of bribery.

3                                          38.

4       The Defendant NPRA is an organization is registered in the State of Washington and
5  operating in the state of Oregon and Idaho.

6                                          39.

7       Engaging in such activities in the State of Oregon, that are done with clear intent to do
8  harm to the Plaintiff, a known resident of the State of Oregon and to effectively cause intentional
9  harm to the Plaintiff financially is a clear violation of the RICO act Chapter 96 of Title 18 of the
10 United States Code § 1961–1968

11                                         40.

12      All actions described in paragraphs 18 through 21 were done without plaintiffs'
13 knowledge, participation or consent.

14                                         41.

15      All demands made by Plaintiff for Jason Buchanan to participate in any action following
16 the signing of "Exhibit 6" have not been acted upon as far as Plaintiff has knowledge.

17

18                                   **Count VIII**

19                      **(Negligence, Bribery, Racketeering)**

20                                         42.

21      On or about October 28, 2008 in Fossil Oregon, Defendant NPRA drafted a
22 contract and named it Promissory Note, and forcing Randy Fery to sign and agree to before
23 payment in the sum of $1,600.00 would be paid for services he provided for production of the
24 2008 NPRA Finals. A copy of this Promissory Note is attached hereto as Exhibit "7" and by this
25 reference incorporated herein.

26                                         43.

Page 11 –PLAINTIFF'S COMPLAINT

1    The Defendant NPRA thus demanded Randy Fery to attempt to collect money from

2    Plaintiff though any and all possible means including filing of a lawsuit. The Defendant NPRA

3    then followed this by demanding that Randy Fery would assign any and all claims and collection

4    rights over to the Defendant NPRA.

5    The Defendant NPRA essentially was demanding Randy Fery to cause the Plaintiff harm

6    in lieu of payment for services he provided for the production of the Defendant NPRAs Finals

7    thus clearly engaging in the act of bribery.

8                                            44.

9    The Defendant NPRA is an organization is registered in the State of Washington and

10   operating in the state of Oregon and Idaho.

11                                           45.

12   Engaging in such activities in the State of Oregon, that are done with clear intent to do

13   harm to the Plaintiff, a known resident of the State of Oregon and to effectively cause intentional

14   harm to the Plaintiff financially is a clear violation of the RICO act Chapter 96 of Title 18 of the

15   United States Code § 1961–1968

16                                           46.

17   All actions described in paragraphs 18 through 21 were done without plaintiffs'

18   knowledge, participation or consent.

19                                           47.

20   All demands made by Plaintiff for Randy Fery to participate in any action following the

21   signing of "Exhibit 7" have not been acted upon as far as Plaintiff has knowledge.

22

23                                   **Count VIIII**

24                         **(Negligence, Bribery, Racketeering)**

25                                           48.

26   On or about October 28, 2008 in Fossil Oregon, Defendant NPRA drafted a

Page 12 –PLAINTIFF'S COMPLAINT

1  contract and named it Promissory Note, and forcing Less Patterson to sign and agree to before

2  payment in the sum of $,800.00 would be paid for services he provided for production of the

3  2008 NPRA Finals. A copy of this Promissory Note is attached hereto as Exhibit "8" and by this

4  reference incorporated herein.

5                                                      49.

6        The Defendant NPRA thus demanded Less Patterson to attempt to collect money from

7  Plaintiff though any and all possible means including filing of a lawsuit. The Defendant NPRA

8  then followed this by demanding that Less Patterson would assign any and all claims and

9  collection rights over to the Defendant NPRA.

10       The Defendant NPRA essentially was demanding Less Patterson to cause the Plaintiff

11  harm in lieu of payment for services he provided for the production of the Defendant NPRAs

12  Finals thus clearly engaging in the act of bribery.

13                                                     50.

14       The Defendant NPRA is an organization is registered in the State of Washington and

15  operating in the state of Oregon and Idaho.

16                                                     51.

17       Engaging in such activities in the State of Oregon, that are done with clear intent to do

18  harm to the Plaintiff, a known resident of the State of Oregon and to effectively cause intentional

19  harm to the Plaintiff financially is a clear violation of the RICO act Chapter 96 of Title 18 of the

20  United States Code § 1961–1968

21                                                     52.

22       All actions described in paragraphs 18 through 21 were done without plaintiffs

23  knowledge, participation or consent.

24                                                     53.

25       All demands made by Plaintiff for Less Patterson to participate in any action following

26  the signing of "Exhibit 8" have not been acted upon as far as Plaintiff has knowledge.

Page 13 –PLAINTIFF'S COMPLAINT

**Count X**

**(Lost Income)**

55.

Resulting directly from the actions of the Defendant NPRA preceding the NPRA Finals held on September 19-20, 2008, in Deschutes County, Oregon.

56.

The Plaintiff lost income in the amount of $10,004 in the year of 2009 from existing contracts that have been canceled due to the Defendant NPRAs negligent actions. This loss was the direct result of the defendant NPRAs actions detailed in paragraphs 5 through 53.

57.

The Plaintiff lost income in the amount of $10,004 in the year of 2010 from existing contracts that have been canceled due to the Defendant NPRAs negligent actions. This loss was the direct result of the defendant NPRAs actions detailed in paragraphs 5 through 53.

58.

The Defendant NPRAs failure to fulfill the obligations as set forth in "Exhibit 1" and the actions taken by the Defendant NPRA in the months following was done with such malice, insult and abuse that it constitutes an independent tort, thus entitling the Plaintiff to recover punitive damages as well as actual damages, which were proximately and foreseeable and caused by the Defendant NPRAs actions.

59.

Defendant NPRA has continued with actions similar to the actions described in paragraphs 5 through 53, at this time and until the concussion of these legal proceedings it is foreseeable for the Plaintiff will occur a financial loss in the approximate amount of $10,004 each year until the conclusions of these proceedings.

Page 14 –PLAINTIFF'S COMPLAINT

1

60.

2    Plaintiff has experienced a financial loss of income in the approximate sum of $20,800

3    and with the foreseeable addition of $10,400 for each year 2011, 2012, 2013 or until these legal

4    proceedings are concluded, together with interest at the rate of nine (9%) per annum until paid in

5    full.

6

7                                **Count XI**

8                                **(Negligence)**

9                                     61.

10    On or about November 15, 2008 in Redmond OR prior to the scheduled NPRA board

11   meeting being called to order Plaintiff hand delivered to Defendant Amis (NPRA Vice-President

12   and NPRA Finals chairman) the 2008 Finals financial details, contracts, and a letter stating that

13   we the Plaintiff had completed all of our obligations in producing the 2008 Northwest

14   Professional Rodeo Finals, and was not interested in any further involvement with the Defendant

15   NPRAs Organization. Attached "Exhibit 2"

16                                     62.

17

18    The Defendant Amis did not present "Exhibit 2" to the complete board of directors,

19   therefore denying the corporation of information which directly influenced the actions stated in

20   paragraphs 8 through 61.

21                                     63.

22

23    The Defendant Amis acted with negligence by not fulfilling his obligations agreed to

24   when taking an oath to uphold the duties of Vice-President, set forth and stated clearly in

25   Defendant NPRAs By-laws and Rulebook. This shows intentional disregard of the obligations

26   set forth in Defendant NPRAs own By-laws and rulebook and defendant Amis should be held

Page 15 –PLAINTIFF'S COMPLAINT

Ryder Gauteraux
P.O. Box 1960
Sisters, OR 97754
Telephone: (541) 410-5317

1   accountable personally for acting outside the scope of his Vice-Presidential duties.

2

3                                    **Count XII**

4                                   **(Negligence)**

5                                        64.

6          On or about November 15, 2008 in Redmond OR prior to and during the NPRA board

7   meeting being called to order Defendant Shannon had knowledge of "Exhibit 2" Plaintiff had

8   hand delivered to Defendant Amis (NPRA Vice-President and NPRA Finals chairman), the 2008

9   Finals financial details, contracts, and a letter stating that we the Plaintiff had completed all of

10  our obligations in producing the 2008 Northwest Professional Rodeo Finals, and was not

11  interested in any further involvement with the Defendant NPRAs Organization.

12                                       65.

13

14         The Defendant Shannon is responsible for acting negligent by having knowledge of

15  "Exhibit 2" that was in possession of Defendant Amis and intentionally did not call notice to

16  "Exhibit 2" to be shared with the complete board of directors, therefore intentionally denying the

17  corporation of information which directly influenced the actions stated in paragraphs 8 through

18  63.

19                                       66.

20

21         The Defendant Shannon acted with negligence by not fulfilling his obligations agreed to

22  when taking an oath to uphold the duties of President, set forth and stated clearly in Defendant

23  NPRAs By-laws and Rulebook. This shows intentional disregard of the obligations set forth in

24  defendant NPRAs own By-laws and rulebook and Defendant Shannon should be held

25  accountable personally for acting outside the scope of his Presidential duties.

26

Page 16 –PLAINTIFF'S COMPLAINT

1

**Count XIII**

2

**(Negligence, Racketeering, Extortion)**

3

67.

4          On or about November 29, 2008 in Fossil Oregon, Defendant NPRA drafted an

5    illegitimate letter-bill and named it Please Remit, this demand was drafted outside the scope of

6    the Defendant NPRAs own BY-laws and rulebook and therefore forcing Plaintiff Ryder

7    Gauteraux to be added to the "black-list" A copy of this Bill is attached hereto as Exhibit "9" and

8    by this reference incorporated herein.

9

68.

10         The Defendant NPRA thus was attempting to force Plaintiff to pay the sum of $18,767.00

11   in order to be a member in good standing in any membership rodeo association in the Northwest.

12   This was done for the sole purpose to make Plaintiff ineligible and blacklisted, therefore

13   incapable in entering and or participating in any aspect in Rodeos throughout Oregon,

14   Washington and Idaho.

15

69.

16         The Defendant NPRA essentially was demanding Plaintiff pay $18,767.00 in order to

17   "work another Rodeo", this was done with intent and malice thus directly causing Plaintiff to

18   lose the ability to work and therefore eliminating a source of income that the Plaintiff is known

19   to rely on.

20

70.

21         Engaging in such activities in the State of Oregon, that are done with clear intent to extort

22   any sum of money from the Plaintiff, a known resident of the State of Oregon and to effectively

23   cause intentional harm to the Plaintiff financially is a clear violation of the RICO act Chapter 96

24   of Title 18 of the United States Code § 1961–1968

25

71.

26         The Defendant is an organization is registered in the State of Washington and operating

Page 17 –PLAINTIFF'S COMPLAINT

1  in the state of Oregon and Idaho.

2

3                                  **Relief**

4        **WHEREFORE**, Plaintiff requests Judgment, jointly and severally, against Defendants

5  under alternative counts as follows:

6        1.   On Plaintiff's **Count I**, the sum of $47,499, together with interest at nine percent

7              (9%) per annum from ten (10) days after each invoice date until paid in full and for

8              any financial sum set forth by jury for punitive damages and for reasonable attorney

9              fees sought by Plaintiff to collect for services rendered to the Defendant NPRA.

10       2.   On Plaintiff's **Count II**, the sum of $47,499, together with interest at nine percent

11             (9%) per annum from ten (10) days after each invoice date until paid in full and for

12             any financial sum set forth by jury for punitive damages and for reasonable attorney

13             fees sought by Plaintiff to collect for services rendered to the Defendant NPRA.

14       3.   On Plaintiff's **Count III**, the sum of $47,499.00, together with interest at nine percent

15             (9%) per annum from the date of entry of judgment until paid in full. and for

16             reasonable attorney fees sought by Plaintiff to collect for services rendered to the

17             Defendant NPRA.

18       4.   On Plaintiff's **Count IV**, the sum of $10,000 or any financial sum set forth by a jury

19             for actual damages and for punitive damages and for reasonable attorney fees sought

20             by Plaintiff to seek relief from Defendant NPRAs actions.

21       5.   On Plaintiff's **Count V**, the sum of $10,000 or any financial sum set forth by a jury

22             for actual damages and for punitive damages and for reasonable attorney fees sought

23             by Plaintiff to seek relief from Defendant NPRAs actions.

24       6.   On Plaintiff's **Count VI**, the sum of $10,000 or any financial sum set forth by a jury

25             for actual damages and for punitive damages and for reasonable attorney fees sought

26             by Plaintiff to seek relief from Defendant NPRAs actions.

Page 18 –PLAINTIFF'S COMPLAINT

7. On Plaintiff's **Count VII**, the sum of $10,000 or any financial sum set forth by a jury for actual damages and for punitive damages and for reasonable attorney fees sought by Plaintiff to seek relief from Defendant NPRAs actions.

8. On Plaintiff's **Count VIII**, the sum of $10,000 or any financial sum set forth by a jury for actual damages and for punitive damages and for reasonable attorney fees sought by Plaintiff to seek relief from Defendant NPRAs actions.

9. On Plaintiff's **Count VIIII**, the sum of $10,000 or any financial sum set forth by a jury for actual damages and for punitive damages and for reasonable attorney fees sought by Plaintiff to seek relief from Defendant NPRAs actions.

10. On Plaintiff's **Count X**, the sum of $60,024 with the addition of $30,012 for each year 2011, 2012, 2013 or until these legal proceedings are concluded, together with interest at the rate of nine (9%) per annum until paid in full

11. On Plaintiff's **Count XI**, the sum of $10,000 or any financial sum set forth by a jury for actual damages and for punitive damages and for reasonable attorney fees sought by Plaintiff to seek relief from Defendant Amis actions.

12. On Plaintiff's **Count XII**, the sum of $10,000 or any financial sum set forth by a jury for actual damages and for punitive damages and for reasonable attorney fees sought by Plaintiff to seek relief from Defendant Shannon actions.

13. On Plaintiff's **Count XIII**, the sum of $30,000 or any financial sum set forth by a jury for actual damages and for punitive damages and for reasonable attorney fees sought by Plaintiff to seek relief from Defendant NPRAs actions.

I declare under penalty of perjury that the foregoing is true and correct.

Dated; this 4th day of November 2010.

By:

Ryder Gauteraux & DBA Outlaw Productions

Pro Se Plaintiff

Page 19 –PLAINTIFF'S COMPLAINT